PEOPLE *ex rel.* TENTH NATIONAL BANK OF NEW YORK v. BOARD
OF APPORTIONMENT OF NEW YORK.

*New York city — Statutory construction — laws of 1872, chap. 9 — Mandamus
validity of disputed claim will not be examined on motion for.*

By Laws 1872, chap. 9, the creation of a fund by the sale of bonds of the city of
New York, not exceeding a specified amount, is authorized and directed for
the purpose of paying certain debts specially described, and, in addition to
that, to pay all moneys advanced by banks, etc., prior to December 31, 1871,
to or for the use of any of the departments, or commissions of the city and
county of New York. *Held,* that it was not intended to authorize the
creation of a fund for the payment of claims which were not legally estab-
lished, and that a mandamus would not lie to compel the issue of bonds to
create a fund to pay a claim by a bank for moneys advanced to a commis-
sion, which claim was disputed. *Held,* also, that the validity of the claim
could not be examined on the hearing and determination of a mandamus.

APPEAL from an order directing a writ of peremptory mandamus,
requiring the appellant, the board of apportionment of the city and
county of New York, forthwith to meet, and by concurrent vote to
authorize an issue of stock of the county of New York, pursuant to
the provisions of chapter 583 of the Laws of 1871, and to take such
action as would authorize the comptroller of the city of New York to
pay to the relator, the Tenth National Bank of the city of New
York, the sum of $242,579.92, with interest thereon from the date
of the several advances of the amounts composing said sum, being
the claim of the bank for advances made to the commissioners of
the new county court-house, prior to the 31st day of December in
the year 1871.

*E. Delafield Smith, John H. Strahan* and *John K. Porter,* for
appellant.

*Wm. H. Field, Henry E. Davies* and *Henry H. Anderson,* for
respondent.

DANIELS, J.   The object of the writ ordered to be issued was to
provide a fund for the payment of the claim made by the relator
for moneys alleged to have been advanced to the commissioners of
the new county court-house, during the continuance of a bank

account, extending from the 29th day of April, to and including the 2d day of September, in the year 1871.

In deciding the application for the writ, the learned justice by whom it was heard and disposed of, did not determine nor pass upon the question of the liability to pay the debt claimed to exist in favor of the relator; but the writ was directed to be issued for the purpose of creating a fund from which the debt could be lawfully paid, in case its existence should afterward be properly established. It was contingent in its nature, rendering the use of the fund dependent upon the circumstance of the relator's ability to show that a just debt was due to it which should be paid out of such fund.

It has been quite common to require municipal bodies to raise money by taxation for the payment of debts existing against them. But legal proceedings for that purpose have neither been authorized, nor maintained, until after the demands to be provided for have been audited and allowed, or established in some other legal manner. Until that is first done, no necessity can exist for the creation of any fund for their payment, and the claimant can have no such right to it as will authorize him to require the authorities to raise it.

The proceeding taken in this case forms no exception to this principle. For if the relator has no debt which can lawfully be paid out of the fund proposed to be created, it manifestly has no right to require the authorities proceeded against to take any measures for the purpose of raising it. A mere possibility that it may be able to establish the existence of a demand of that nature cannot be sufficient for that purpose. If it should be, then it is very clear that the fiscal authorities may be required and compelled to create funds, by both taxation and loans, which may never be required for expenditure. That is an obligation, which should be very clearly shown to be created, before courts of justice can properly be justified in maintaining it ; and the act authorizing the fund to be created in this instance has not done that. It has simply provided that certain specified debts shall be paid, and authorized a fund to be created by a sale of bonds to an amount not exceeding eight and one-half millions of dollars for their payment.

The object of the law very plainly was to provide the means for paying certain debts (and they are specially described), and, in addition to that, to pay from the fund all moneys advanced by

banks, insurance and trust companies, prior to the 31st of December, 1871, "to or for the use of any of the departments or commissions of the city and county of New York." Laws 1872, chap. 9, § 2. And to provide for such payment, it is provided that bonds shall be issued and sold.

Before that can be intelligently done, the debts themselves must be known. For no greater fund was authorized than should be required for their payment, and that can only be ascertained when the debts themselves have been established.

As fast as that may be done the fund can consistently and properly be created, until a sufficient amount has been realized to pay all the debts provided for by the act. But the authorities to whom the duty of raising the fund has been committed cannot be required to proceed more rapidly than that. If they did they might create a fund not required for the uses specified by the law, and that no authority has been provided for doing. In fact, it would involve an excess of authority beyond that provided for.

Without a debt being due to the relator of the description given in the law, the board had no right to provide for the issuing of bonds on its account, and the relator itself had no interest in the act being done. To maintain its proceeding and set the board in motion, the fact must first be made to appear that a debt is owing to the relator which it may lawfully require to be paid out of the proceeds of the bonds to be sold, and that must be done in the manner provided for the purpose of trying and settling disputed controversies of fact in legal actions.

A conceded claim audited and allowed by the proper authorities would be sufficient to entitle the relator to require that the fund for its payment should be raised. But a controverted demand can justify no proceeding of that kind. And as the validity of the relator's demand has been denied, the issue existing concerning it must first be settled in its favor before it can insist that measures shall be taken to provide means for its payment.

The application made in this case was for a peremptory writ of mandamus directing the bonds to be issued for the purpose of raising those means. But as no debt appeared to exist to be paid by them, the application could not properly be allowed to succeed.

To warrant its success the debt should have previously been established. That could not be done in the hearing and determination of the motion made, for the law has prescribed an entirely

JANUARY TERM, 1875. 385

People ex rel. Tenth National Bank v. Board of Apportionment.

different course for the settlement of disputed matters of fact in proceeding by way of mandamus. And that is by forming what are denominated issues of fact formed by written pleadings, and trying the same by jury in all cases where the existence of a long account may not require the case to be referred. That mode of proceeding has been declared by statute (2 R. S. 586, § 56), and since then it has been sanctioned by a constitutional provision. Const. of 1846, art. 1, § 2. See also cases cited in *People* v. *Green, ante,* p. 376, decided at this term.

A controversy of this character appeared concerning the relator's demand from the papers produced upon the hearing of the application. For although the affidavits produced in its own behalf tended decidedly to show the existence of a debt the statute provided should be paid out of the proceeds of the bonds, they were as positively denied by those on which the motion was resisted. Norton positively stated that the moneys claimed to have been advanced by the relator to the court-house commissioners were advanced to Ingersoll and not to them, and that he was never authorized to borrow the money on their account for their use. He stated further that Palmer, the president of the bank, informed him that the advances were to Ingersoll, and he wished the certificate which they finally signed as an acknowledgment that they were made to the commissioners.

Taintor, who swears that he endeavored to discover by an investigation whether the relator's claim was just, states that he was frustrated in his efforts to do so by the relator's officers so far as the examination of the books of the bank were required for the purpose. He was in the finance department and directed to examine the facts upon which the relator predicated its claim. And after doing so as far as he was permitted to, he reached the conclusion positively asserted in the affidavit made by him. And that was as he had expressed it, "That the sums set forth in the affidavit of Mr. Palmer, the president of the bank, alleged to have been advanced to the county or to the court-house commissioners, were not advanced or paid by said bank to said county or to said court-house commissioners, but were paid to said Ingersoll, a director of said bank, at the request or on the instigation of himself and his co-directors, Connolly, Tweed and others, well knowing that the same were not to be used for the completion of said court-house, and there is not now, nor has there at any time, been justly due and

owing to said bank by said county on account of said alleged advances, the sum of $256,415.58, or any part thereof."

In addition to that, the comptroller swore that he had made an investigation concerning certain claims, and "from the examination so made I was satisfied no valid claim exists on the part of the relator against the county."

The persons making these affidavits may in the end prove to be mistaken in their conclusions and statements concerning the claim made by the relator. But if they are, that cannot be lawfully determined in this proceeding. For that investigation another mode has been prescribed which this court is not at liberty to disregard.

The papers produced upon the hearing were evidently prepared under the conviction that the success of the application depended upon the relator's ability to establish as a fact that a debt was due to it of the description which the act provided should be paid.

That it has failed to do, for by the affidavits controverting it the existence of it is the plain subject of a well-founded controversy. That must be judicially settled before it can be consistently concluded that the relator has such a demand as will entitle it to have bonds ordered to be issued and sold for the purpose of providing a fund for its payment. It has not been done and it cannot be done upon the affidavits and papers before this court.

The order appealed from should be reversed with $10 costs besides disbursements, and an order should be entered denying the motion made for a writ of mandamus with $10 costs of opposing it.

*Ordered accordingly.*